THE JOHN B. DALLAS.

(District Court, D. New Jersey. June 12, 1899.)

1. COLLISION—SUIT FOR DAMAGES—PARTIES.

A purchaser of a vessel, who had made part payment thereon, and was in lawful possession, under a covenant to keep her in good repair and running order, at the time she was injured in a collision, although the legal title remained in the vendor, may maintain a suit in admiralty to recover damages for the injury.

2. SAME—SETTLEMENT WITH THIRD PERSON.

The claimant of a vessel libeled for collision cannot relieve the vessel from liability to the libelant by any settlement made after the suit was commenced with one not a party to the record, and without the libelant's consent.

This was a suit in rem to recover damages for collision.

Hyland & Zabriskie, for libelant.

Deady & Goodrich, for claimant.

KIRKPATRICK, District Judge. The canal boat Hunt while in tow came in collision with the steam tug John B. Dallas, and was seriously injured. It is admitted that the Hunt was in no way responsible for the collision, and that she is entitled to damages. The libel in this case was filed by Joseph D. Lafayette, who at the time was the captain of the Hunt, and in lawful possession of her under a contract of sale which provided for payments to be made from time to time, the title to remain in the vendor until all of the payments had been made. The contract of sale also provided that the said Lafayette was to "keep the said boat in good repair and running order at his own cost and expense." There is some controversy over the amount which had been paid by Lafayette on account of the purchase price of the Hunt at the time of the collision, but it is conceded that it was in excess of the one-half of the purchase price. The legal title of the Hunt was, however, still in the vendor,—one Jesse Billings. The question presented for consideration is whether

the libelant, having an equitable interest in the Hunt, being in lawful possession of her at the time of the accident, under a covenant to keep her in "good repair and running order," has a status in this court to maintain an action in rem for damages resulting from collision. This question, it seems to me, must be answered in the affirmative. The case is, in principle, analogous to The Minna, L. R. 2 Adm. & Ecc. 97, in which the plaintiffs had hired a barge upon the terms that she was to be at their risk, and to be returned by them to her owners in as good condition as when delivered to the plaintiffs. The barge was injured in collision while in plaintiffs' care, and, upon suit brought, it was contended that plaintiffs had no right or title to maintain the action. But Philemon, J., said that the court of admiralty should take jurisdiction. With The Minna as a precedent, his honor, Judge Acheson, held in The Venture, 18 Fed. 463, that he saw no good reason for denying to bailees, who might maintain an action at common law for their damages, the right to recover in admiralty full damages for an injury to property under bailment, whether the suit was in personam or in rem.

But it is contended on behalf of the claimants that the libelant ought not to maintain this suit, because the claimants have made a settlement with the holder of the legal title of the Hunt. That settlement, the record shows, was not made until after suit was begun by the libelant herein for the enforcement of his rights and the protection of his interests. The claimants herein had at that time full knowledge of the equitable interest of Lafayette in the Hunt, and of his contract obligation to keep her in repair. Billings, the holder of the legal title, was not a party to the suit, nor did the claimants take any steps towards making him so. The settlement was made without the intervention of the court, against the protest of the libelant herein, and not until after the claimants herein had received a bond indemnifying them against loss for so doing. Under these circumstances the claimants herein could not by any payment to Billings, not a party to the suit, relieve themselves and the tugboat John B. Dallas from their known liability to Lafayette, compel him to abandon his suit lawfully begun, and remit him, contrary to his will, and perhaps his interests, to an uncertain remedy against a third party. There could not be any settlement of the amount of damages to which the libelant herein was entitled, without his consent. The voluntary payment to Billings will not prevent Lafayette from prosecuting his suit in this court. There should be an interlocutory decree in favor of the libelant, with usual order of reference.